## George Barrie & Son v. Mrs. Albert C. Frost.

1.  STATUTES—*Sec. 10, Ch. 98, R. S.*—Sec. 10, Ch. 98, R. S., provides that fraud or circumvention used in obtaining the making or executing of even a negotiable instrument, may be pleaded in bar to any action brought on such instrument so obtained, whether such action be brought by the party committing such fraud or circumvention or by any assignee of such instrument.

2.  FRAUD—*Is Never Presumed.*—Fraud is never presumed; the burden of establishing fraud is upon him who asserts it.

**Assumpsit,** upon a contract of subscription.   Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge presiding.   Heard in the Branch Appellate Court at the October term, 1901.   Affirmed.   Opinion filed December 30, 1902.

DANIEL S. WENTWORTH, attorney for appellants.

CHARLES ALLING and JAMES F. HUTCHISON, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This was an action of assumpsit, based upon the following writings:

"To MESSRS. GEORGE BARRIE & SON, GEO. A. KILBORN, GEN. AGT:

I hereby subscribe for, and you agree to deliver, one com-

plete copy of Historical Memoirs, Second Series, in twelve volumes, Japan Vellum Edition, as issued, for which I agree to pay, on delivery, $10 per volume. Only one thousand copies on Japan Vellum guaranteed. To correspond with sample.                                    MRS. ALBERT C. FROST.
    Dated Oct. 20, 1900."

Upon the reverse side of said contract appears the following :

"Please to state any special conditions, if any, on this contract, so there may be no misunderstanding. Contract can not be canceled. State when to be delivered."

And immediately below this, in the handwriting of Mrs. Frost, appears the following :

"I wish this work delivered, when it is completed, at the same price as my first work—$120, less five per cent for cash. To be marked as my first twelve; to be marked thus : Albert C. Frost."

Upon the trial it appeared by the testimony of appellee, that, having made with appellants a written contract for a complete copy of Historical Memoirs, in twelve volumes, at $12 per volume, such subscription and contract by her having been made through the agency of a Mrs. George, a canvasser employed by appellants, thereafter, the same canvasser, still in the employment of appellants, called upon her three or four days after she had made the said contract, and informed her that a lady on the Lake Shore Drive had just given her an order for two sets of the same book with her monogram, and asked appellee if she would not like to have her monogram, to which appellee replied, "I certainly would like to have my monogram;" to which agent of appellants replied, "You will have to sign for another set and I will cancel the first set; another set in place of the first set." Whereupon appellee signed.

Appellee further testified :

"I thought it would be the same as my first with the monogram. I wrote and signed what she dictated; I only intended to order the first set. I had a caller at the time and I thought she was thoroughly honest, and I just signed what she told me to. She made me sign for the second edition."

Appellants do not appear to have, before bringing suit, tendered a delivery of the books, although it does appear by evidence, to the introduction of which appellants objected, that appellee refused to take more than one set of books, and thus a formal tender of the same was waived, and it was not necessary that appellants should do more than offer to deliver the second set. There was no denial of the truth of the testimony of appellee.

The jury returned a verdict for the defendant upon which there was judgment. Appellants contend that the court improperly allowed appellee to introduce evidence varying the terms of a written contract. We do not regard the evidence introduced by appellee as offered for the purpose of varying the terms of a written contract, but rather offered as tending to show that appellee was induced by the fraud and deception of appellants' agent to sign a paper without understanding its terms.

In Linington v. Strong, 107 Ill. 295, the court approved of the following instructions:

" The law requires every person to exercise reasonable prudence in business affairs, and before relieving a party from the obligation of a contract upon the ground of fraud it must appear that he exercised reasonable care and prudence to learn the nature of the contract before executing it. If the defendant could read and had an opportunity to read the contract before signing, it was his duty to do so, unless induced not so to do by willfully false statements of the plaintiffs, or one of them, as to its being a copy of the original, and if the defendant had full opportunity to read the contract before signing and was not induced to sign it by false statements made by plaintiffs, or either of them, the defendant would not be permitted to deny knowledge of the contents thereof."

The statutes of this state, section 10 of chapter 98, especially provide that fraud or circumvention used in obtaining the making or executing of even a negotiable instrument may be pleaded in bar to any action brought on such instrument so obtained, whether such action be brought by the party committing such fraud or circumvention or any assignee of such instrument. In the present case appellee

could read and had apparently a reasonable opportunity to read the unnegotiable instrument she signed, and unless she were by the fraudulent representations or conduct of appellants' agent induced not to read the instrument she signed, she is bound thereby.

There was evidence upon the trial of this cause tending to show that the arrangement under which she signed the instrument in question was that the order she had previously given for a set of Memoirs was to be canceled and set aside; indeed, the material consideration and inducement moving her to sign the instrument upon which suit was brought, was the agreement of appellants through their agent to set aside the first order and give her in place thereof the same work having thereon her monogram. It is uncontradicted that the contract upon which this suit was brought was made upon the consideration that the former contract for the same books should be canceled. Appellants urge that their agent had no authority to cancel the first contract; that it is still existing and appellee bound to take and pay for duplicate sets of ten volumes of these " Memoirs," each costing $120. If the first contract or order be uncanceled, then the consideration and the inducement for the signing by appellee of the second order has failed, or rather the second signing was without consideration. The obligation of appellee to pay for one set of the " Memoirs " is not disputed. She denies only any obligation to pay for two sets. Appellants did not attempt to contradict the testimony of appellee given upon the trial. If what she said was untrue, if she were not by the representations of their agent induced not to read the contract she signed, or if the consideration for such signing 'was not the cancellation of the order she had previously given, they could have called their agent, Mrs. George, to contradict her. This they failed to do.

The jury had before them the testimony as to what occurred and the circumstances under which the writing upon which suit was brought was signed. Appellants call attention to the statement in the instrument signed by

appellee, " Contract can not be canceled." If by this is meant that the contract could not be canceled at the will of one party thereto, it was but stating a familiar principle of law. If by it was meant that it could not be canceled by the consent of both parties thereto such a contract would have a significance which could not be given to it by the agreement of the parties. Appellants might perhaps have had inserted in the contract that it could not be canceled except by the written consent of their firm; this they did not do.

Fraud is never presumed; upon him who asserts fraud is the burden of establishing the same. We are not prepared to say that if appellants' agent had appeared and contradicted the testimony given by appellee, it would not have been the duty of the jury to have found for appellants. As it is, we think the jury were warranted in coming to the conclusion it did, and that the court neither in giving nor in refusing instructions, or otherwise, committed any error for which this judgment ought to be reversed. It is therefore affirmed.